Good morning. Let us begin. Good morning, Your Honor. Charles Scipio for the appellant, Bill Patterson. May I reserve three minutes for rebuttal? Three minutes it is. Go ahead, sir. Thank you, Your Honor. This is a narrow appeal that comes to this court from the U.S. District Court for the Eastern District of Pennsylvania, and I think there are two issues for the court to consider. First, did the District Court err in granting a motion to dismiss on the affirmative defense of Eleventh Amendment immunity without affording any opportunity for discovery? If this court, rather, is inclined to find that the court should have allowed some discovery, I don't think it needs to go any further in evaluating whether or not there's immunity. The appropriate thing to do would be to remand the case back for discovery. But if the court wants to consider the substantive arguments that were raised in the court below, I think there was a reliance on a case that was wrongly decided in 2011, and that is the Hepler case. The Hepler case, I think, didn't truly analyze whether or not... That's pretty clear. Carnes is pretty clear. And if we were thinking about the case as far as disposition in the same way, it doesn't really matter. Obviously, I understand you're like, send it back, send it back. But as a practical matter, that's the quandary, right? Well, as a practical matter, I understand what you're saying, Your Honor. I think Molinari is different than this case, and I think it's distinguished. When you're talking about... Just for the record, you mean Maliandi, right? Maliandi, excuse me, Your Honor. Molinari is another one. When you're looking at those cases, you're talking about public schools, colleges. When you're talking about the Wicker Control Board, I think you're talking about an entirely different kind of entity. This is an entity that has a number of powers that a public college would not. I mean, the Wicker Control Board, by statute, is an independent board. Let me go back to your threshold argument. Do you really think this issue, the 11th Amendment issue, is driven by factual issues or strictly a legal issue? I think it could be driven by some factual issues, Your Honor. Such as? Well, the reason I say that is if you're confronted with something like this where you have a very complex statutory regulation that kind of guides how the board operates, the board may operate differently in practice. I just don't know that. And the only thing this court has to rely on, what the district court has to rely on, is what the statute says on how the board is supposed to operate. It may operate a little bit differently in practice. And that's why I think some discovery may have been helpful in developing a factual record for this court to say definitively, yes, there's 11th Amendment immunity, or no, there is not 11th Amendment immunity. Could you give me two examples from your discovery request that you think would be material to that determination? Well, there were no discovery requests made, but if I were to have made discovery requests, I think a 30 v. 6 deposition would have been helpful to kind of go through the factors and say, okay. Give me two specific ones. Two specific examples. One specific topic I would like to probably go through is how the board operates in terms of its ability to sue and be sued. Isn't that dictated by the statute? Well, the Hepler Court said that the board didn't have the right to sue and be sued. I think there's a concession in the brief that they can sue, and there are some cases where they have sued in their own right, and there have generally been contract disputes and things along those lines. We have Third Circuit precedent. They put Hepler aside. Let's just say it's a district court case. It's an anomaly. We have a focus as to what the standard should be. But on this particular point, you argue that PLCB is autonomous from the state, and you rely on the enabling statute for that argument, yes? Yes, Your Honor. Right, and you say PLCB is an independent administrative board. On the other hand, all of the PLCB's purchases must be approved by the state treasurer or his deputy. The PLCB and its employees are subject to various statutes that agencies must regularly comply with, such as the Civil Service Act, State Adverse Interest Act, and it appears pretty clearly that the governor can hire and fire members at will. Given all that, how does the PLCB really act as an independent administrative board when it appears so intertwined and dependent on state control? Correct, Your Honor. So there's three factors, as the court's probably aware. There's the status under state law, and there is the autonomy factor. I think what Your Honor had just referenced may move towards the autonomy factor, and even if that tips a little bit in favor of LCB, I think you have to look at its status under state law. And there are a lot of things that the LCB can do that I'm not aware of other state agencies having the ability to do. And one of those was, for example, under 47PS2207, the board can make regulations that have the same force and effect as law under the Liquor Control Board, or excuse me, under the Liquor Code. And I think that's considerable. I mean, you're talking about something that's very, very independent. If they promulgate regulations, yes, they have to go to the Attorney General's office for approval, but that doesn't mean that the board can't go its own way. If you actually look at some of the statutes that are cited in the briefs, if the Attorney General's presented with a regulation that the Liquor Control Board comes up with, it can disapprove of the language and the board can continue to move forward on its own. So do I take your answer to be that you think you have a losing proposition on autonomy and that you want us to focus on status and funding? I wouldn't necessarily say it's a losing proposition on autonomy, Your Honor, but I would concede that it may tips. And I said this in our brief. I would concede that it tips slightly in favor of autonomy, given that the governor can appoint members to the board and the Pennsylvania Constitution would allow those members to be removed from the board for reasonable cause and things along those lines. But if you're talking about the status under state law, I think that is very significant here. This is a board that has a lot of power to do things that I don't think would lend itself to being an arm of the state. I think one of the things this Court said in Christie, when it evaluated whether or not the Pennsylvania Turnpike Commission was entitled to 11th Amendment immunity, was that the state satisfactor weighed against immunity because the Turnpike Commission had the ability, for example, to engage in contract with other entities and had the right to sue. What do you make of the fact that there are many states' courts of appeals decisions conferring sovereign immunity on the control board? Are you aware of any state decision that held to the contrary? I'm not aware of any state decision. I am aware there have been federal decisions. There was the Savage decision, which we cited in the brief. I think that was decided before Fitchik, so there wasn't any factors. I'm talking about Pennsylvania state courts. Pennsylvania courts of appeal have found sovereign immunity. I'm not aware of a decision. I'd have to look in the brief again, Your Honor, just to make sure I'm right about that. But I don't think there was any decision cited in the brief. I think there was a citation in the brief to a number of federal decisions that had found there was 11th Amendment immunity. But even if there was a few state court decisions, I think where you distinguish this case is, the other cases I've seen involved things that happened in New Jersey, and there was a lot more case law that had analyzed this considerably. I'm not aware of any Supreme Court of Pennsylvania decision that has said LCB is entitled completely to sovereign immunity. Well, help me now. If we're talking about status under state law and we have all of the subfactors, what subfactors balance in your way? I mean, the general treatment under state law, the separate incorporation, the ability to sue or be sued, immunity from state taxation, which one of those are yours to your benefit? Well, I think the one that works to our benefit is that there is the ability to sue and be sued. I mean, there are cases where the liquor control board has sued in its own name. There have been contract disputes. As far as the separately incorporated factor goes, I think there's a pronouncement by the state legislature that it is independent. And I think the law is sort of silent as to whether or not that actually means it's separately incorporated. But when a state legislature says, here's an agency and we're going to call it independent, I think that has to mean something. So whether or not this court means that it's separately incorporated is certainly up to the discretion of the court. Well, but as we do our balancing and we look at the factors, let's just talk about status for a moment, and we just look at those factors, how are we to come to the conclusion that you would hope us to come to when the facts aren't there? If you look on balance at the five or six subfactors within factor number two, they certainly don't – I mean, I understand that with regard to one or two of them there are arguments to be made, but they certainly don't tip in the balance. And we know that from Carnes that our analysis should be that the three major factors are co-equals. So if we put autonomy on the side and you've agreed that you concede that it seems to tip towards immunity, and now we're looking at status, and status doesn't weigh towards immunity, I presume we're left with funding, but we know that funding is no longer under our law the key factor that will tip the scale. No, and as your Honor is likely aware, funding has been found, at least in the courts that have analyzed this, to be a factor that weighs against LCB. So if you're looking at state status, that's really what the court needs to consider here. And if you look at all of the powers that the state has, I would argue that under Christie, the way this court analyzed the Turnpike Commission, I don't think the court can come to a different conclusion. If under Christie it was enough that the Turnpike Commission could sue in its own name and make contracts like the Liquor Control Board can do, I think the status factor has to weigh against immunity. And then you have two factors of the Fitchick test weighing against LCB, and that should be sufficient for this court to say, no, there is no 11th Amendment immunity. No, we're not supposed to just count up numerically. In fact, that might be one of the problems with early decisions, whether you think Hepler did that or not. We're not supposed to just numerically count up, well, two of them this way and one of them that way. We're supposed to do some qualitative weighing. And it seems to me the best argument for your side is that it looks like this is not a classically funded agency. But when you're talking about status under state law, you started bringing in the board being independent, which is really an autonomy factor. But on status, do we know? You say the contracts, they can enter contracts. The contracts have to be approved by the attorney general. Purchases of alcohol have to be subject to approval by a state treasurer. I don't know. What do we know about taxes here? Because it doesn't look like the status is really that of an independent business as opposed to really a government agency. Autonomy might be a different story. Well, Your Honor, so what I've understood from the briefs is the LCB does not pay taxes. They do collect taxes. That's one factor. Do they collect the Philly so-called soda tax?  But my understanding is that they just merely collect tax. They do not pay any taxes to the Commonwealth of Pennsylvania. But in this weighing that Judge Beavis asked you about, right, and let's just focus on factor two now. I mean, if you look at the subfactors within status, right, they don't in order to your benefit. You look at them, taxation, we just brought up there's no indication in the record, you know, that they pay taxes on revenue, property, bonds to the Commonwealth. How are we to come to any other conclusion just with regard to status? Because although it isn't a strict weighing among the three and certainly we can take varying views on each of the three of them, they are co-equals under our law at the moment, and that's what we're left with. So help us on status. So I understand, Your Honor, they are co-equal and all the factors need to be sort of balanced. But I think, again, the precedent this Court set in Christie I think has to command the same type of conclusion here. But how does Christie undermine the consideration of all of the subfactors within two? Because I don't think fundamentally, and this is a matter of law that the Court could consider outside of the record just by looking at the statutes, I don't think functionally the Pennsylvania Turnpike Commission is that much different than the Liquor Control Board in terms of the way it operates, in terms of oversight and the way it reports to the state legislature. I mean, oversight and requirement to interact with the legislature, I think, is different than the ability to carry out things as they see fit. I mean, nobody is saying that the Liquor Control Board can do whatever they want, but just being subjected to some type of oversight and some reporting requirements, I think sort of weighs in our favor against immunity. It makes them independent in a lot of ways. Okay, thanks. We'll get to her. Good afternoon. Good afternoon. May it please the Court, I'm Claudia Tesoro. I'm with the Office of Attorney General, and I'm obviously here to represent the Liquor Control Board. I say something like that at the beginning of any argument, but I want to highlight it just a little extra today because the Office of Attorney General represents Commonwealth agencies and officials. It doesn't represent non-Commonwealth parties. So that's not dispositive, but it's one teeny piece of the puzzle here. Let's talk about another teeny part of the puzzle. So in the complaint, the plaintiff says in Paragraph 3, Defendant Pennsylvania Liquor Control Board is believed and therefore referred to be an agency of the Commonwealth of Pennsylvania who may be served at the above address, et cetera, et cetera. So given that we read a motion to dismiss, is that an admission that can be used in any way here? Well, I think it's a legal conclusion, and legal conclusions don't have to be accepted at face value. But I think the whole discussion that's already been had in this courtroom, plus in the district court and in the filings, indicates that that is correct, that Liquor Control Board is a state agency. If I can devote for a second to Mr. Scipio's point about it being independent, I think that's really a misleading or incorrect way of focusing here. The Liquor Control Board is one of many independent board and commissions throughout the Commonwealth government. For example, there's an entire list of independent agencies in the Commonwealth Attorneys Act. I don't think they're any different than other kinds of Commonwealth entities. They're just not executive departments the same way that the Department of Health or something like that is. Are you aware of any state court decisions finding sovereign immunity, sovereignty that covers the Liquor Control Board? Yes. For example, the Garrison case that's cited in our brief is one. I think there's another one. Merchant's Warehouse. Excuse me? Merchant's Warehouse. I wasn't going to mention that. But they may be right. What? Well, go ahead. You tell me. What I was about to say is that the Liquor Control Board has sovereign immunity like any other state agency from tort actions. And the reason we know that, or one of the reasons we know that, is that the exceptions to immunity in the sovereign immunity statute include one that is precisely tailored for a particular kind of case that can only arise against the Liquor Control Board, sort of a dram shop case. If the Board were not a Commonwealth agency, that provision would be unnecessary. The Board is also subject to being sued in the Board of Claims, which is a different waiver of immunity for Commonwealth entities. So there are a bunch of sub-factors here, and I want to know more about appointment and removal. It looks like the chair is at the pleasure of the governor. I don't know whether historically other members have been removed, if there's forecalls. We could talk about taxes. But before we get into the weeds, I want to step back to the forest, which is liquor is different. We live in a world after the 21st Amendment where liquor is a heavily regulated industry. But it's not. In many states it's private enterprises regulated. Pennsylvania has this pretty pervasive set of regulations. Why is it that if Pennsylvania sets up this hybrid scheme, we should be viewing it as mostly government but for profit, as opposed to private but just hedged in all around by rules? Absolutely. What's the baseline here for understanding Pennsylvania's scheme as being the government occupying the field as opposed to just a government-sponsored monopoly or something like that? The Board was established days after the end of Prohibition, and I think it was Pennsylvania's apparent effort to reinstate, to the extent that it could, the kind of control and regime that existed when there was Prohibition. It is intended to be serving a public purpose, and the statute says that right up front. I forget if it's BILO or ILO case that was decided a number of years ago, but the Supreme Court recognizes that the Board is serving a governmental function. Encompassed within the statute is the entire process of permitting and challenging permits, challenging violations of the liquor code through the administrative stages that are available and upon appeal to the Pennsylvania courts, including the Commonwealth Court, which only exists to hear governmental appeals, basically. So there's really, I agree with you, in a way it's hybrid because they make retail sales of liquor, but that's not the only thing they do. I also think, at the risk of being a little bit glib, we hear from time to time, I think at least as recently as last year, that there are efforts to change the system and quote, unquote, privatize the liquor system. If it weren't already public, then privatizing it wouldn't be necessary because it wouldn't be private. Let me ask you, I'm sorry. No, I'm finished. So in your brief you contend that we give the funding factor minimal weight because the state officials and other state agencies are deeply involved in overseeing the state store's fund and allocating money to the Board and so forth. Does that run the risk of us sort of overcounting? Because that sounds like a way that we should be thinking about the autonomy factor as well. So you take one fact and it runs this way in your favor for funding, runs the same way that is favorably when considering autonomy. I understand what you're saying, and I think, although perhaps not successfully, I tried to indicate in the brief that while raising it in terms of funding, it also does sort of blend into the autonomy issue and it can also be considered in that regard. The funding factor, the best way I can think of to say that the funding factor is really different here is that the money that runs the Board comes from liquor sales essentially and probably permit fees and maybe a couple other things. But basically, you don't have the same kind of funding breakdown that you do for most agencies. And that's true. I agree with you on that. But I think that the character of the funds that go to the Board and then are deposited in the state store funds is also kind of unique. There isn't anything analogous that I know of to the state store's fund that collects and then appropriates money back to the Board the way this looks. Do I have it correctly if my understanding is the money comes in and it goes from the state legislature to the PLCB to the store's fund? Is that correct? I'm not sure I caught or necessarily agree with the sequence you described. If somebody goes into the state stores and buys a case of wine, the profit from that is kept somehow by the Board and I really couldn't tell you how, but the Board's receipts are in turn, as I understand it, turned over to the state store's fund which is controlled by the legislature. The year after that transaction, shall we say, when the Board has to obtain some of its own money back by the appropriations process, they do go through an appropriations process which is comparable to that that is used by other state agencies. It's just that the money that is paid in and paid out is channeled through the state store's fund rather than just the general fund or probably there are any number of other funds that the legislature controls. To the extent there is ever an excess, that money is allocated by the state? I understand it's revenue that's gone through the PLCB, but that money is then allocated by the state legislature to wherever? I think if there is an excess, it can be transferred to the general fund and if there is a shortage for the Board to operate for its upcoming year, let's say, there may be a process to, in essence, borrow from the general fund if necessary. So if there were a judgment against the Liquor Control Board, who pays it? It's my understanding that the Board would pay it, but would have to go through whatever process any other agency has to go through to get money out of the legislature to turn it over to the person. But there's also the insurance aspect. The revenue to pay the judgment, that's really the key to the question. It would be dollars earned by the Board through its operations would be used to pay it. They would have to come up with that. But you're not representing us. You're aware of any case in which they've had to dip into general revenues to get a special appropriation. Historically, I'm guessing, the Board has had enough money from the sales of liquor, etc., to satisfy obligations, liabilities, etc. So it's not dispositive, but it seems to weigh against immunity that this is not going to hit the general fisc. I don't disagree with what you just said, and I don't think I've tried to convey otherwise. But you're not aware of any situation in which it has had to go to the general fisc for appropriations? No, I'm not. Okay. What do you make of counsel's argument that factual discovery would help us untie this knot? I think, frankly, that argument was at best raised in passing below and not developed in the brief and really doesn't deserve anybody's deep attention at this point. But even if we want to think about it in more substantial ways, I don't know what they would pursue through factual discovery. This isn't like an accident case or a policy-making challenge or something like that that has to be explored. This is a pure question of law, as I think Mr. Scipio even acknowledged. And the law is set forth in the statute. Almost that entire green book on my table there is the liquor code. It's got about 20 extra pages for something else in it. It's very pervasive. The case law tells us that, generally speaking, specific statutory indicators are pertinent in this inquiry as far as determining what the status of an agency is and the many, many, many provisions of liquor code guide us. There's nothing really left to ask about that I can think of that would make discovery a productive exercise, even if the issue had been properly developed and explored. If you have something that you feel obligated or pressing to get to, then talk about it. Most of what I wanted to say I have managed to say already. I do want to respond briefly to Mr. Scipio's mention of the promulgation of regulations, because if I understood him correctly, I don't think that helps the plaintiff's or appellant's case. The fact that the board has the power to promulgate regulations that have the force and effect of law and has to comply with the Commonwealth documents law to do it and has to have things reviewed by the Attorney General supports, in my opinion, the conclusion that the board is a governmental agency and an arm of the state. It has no significant distinction that I can think of from the Carnes case, the Bradley case, or the Malayandi case that have been mentioned during our discussion today, and I think that the three factors properly analyzed result in only one possible conclusion, which is that the board is an arm of the state. Your adversary started his argument with Hepler. I take it you say that's just an offshoot. We can focus on Malayandi and Carnes. Did you just ask about the Hepler case? I said your adversary started his discussion with the Hepler case. Yes, I know that he did. I didn't hear you properly. That's okay. And my question to you is I presume that's merely an offshoot that we can disregard since we now have Malayandi and Carnes to rely on as far as what the appropriate mode of analysis is. Yes, I do agree with that. I think that the approach that was taken in Hepler, if anything, sort of telegraphed what was going to happen in this court's own opinions that were much more elaborate, dealing admittedly with different agencies, but the legal analysis is much more applicable to the task at hand today. All right. Thank you. Thank you. Your Honor, briefly, I just want to touch on what we were discussing before I took my seat. I took a look at Christie again, and three factors that the Christie court considered when evaluating whether or not the state status factor weighed against the term by commission was the fact that basically the term by commission had statutory immunity from suit, it was exempt from taxes, and it also had the right to exercise eminent domain powers. Despite all of those things, this court said that immunity wasn't applicable under that factor because it said that the term by commission had the ability, for example, to enter into contracts and to sue and be sued under its own name. And I think that's significant. I think it goes back to what Your Honor was asking me about earlier. How do we reconcile some of the sub-factors in the state status prong and kind of say maybe 11th immunity doesn't apply here? I think if this court was to say that the Liquor Control Board does have immunity, it would be taking a position that I think is inconsistent with what it did in Christie. And you're going to create, I think, probably a litany of litigation and confusion about what state agencies in Pennsylvania are going to be subject to immunity and which aren't because generally speaking, they all have their own subset of rules, but a lot of them kind of operate under the same type of Pennsylvania framework. And with the example of Pennsylvania Term By Commission, again, this is an agency that had considerable power. I mean, eminent domain power is traditionally a power that has been held to be something that a state does. But even though they had that power, this court said in Christie that the Term By Commission still didn't win on the state status prong. So I would respectfully assume that that's something the court has to strongly consider in deciding whether or not 11th Amendment immunity is going to apply here. What's your strongest argument on funding? Strongest argument as to what, Your Honor? On funding. The strongest argument as to funding, Your Honor, is I don't think There's not a lot of information to go by based on the fact that when you had the motion dismissed in the court below, there wasn't a real explanation as to how the state funding factor would have benefited LCB in an analysis. They just cited to Hepler and said we win because of Hepler. So we get here and I have the appellee's brief and they've gone through this extensive analysis of why the funding scheme should weigh a little bit in their favor. The fact that there is the state stores fund, and I think this goes back to some questions Judge Bevis was asking, if there was a judgment, it doesn't seem to me like it would ever come out of the state coffers. It would come out of the state stores fund monies that the Liquor Control Board has raised on its own. I still think that factor would weigh against immunity if it was analyzed by this court. All right. Thank you very much. Thank you. Thank you, Counselor. For your arguments, we will take the matter under advisement.